The final case for argument is 18-1981, Game Technology Company v. Activision. Okay, I think we're ready, whenever you are. May it please the Court. I'm Richard Castellano for Appellant. Good morning, Your Honors. Appellant appeals from an IPR decision. The PTO found invalid appellants U.S. Patent No. 8253743 and found all claims 1 through 11 invalid over prior art, and specifically one round of invalidation was over the Diablo II reference, and a second round of invalidation was over the Diablo II reference in view of a second reference named Rogers that was actually cited and applied. On page 19 of the blue brief, you say the claimed game avatar, I assume that's how it's pronounced, is not merely exclusive to a game but is concurrently usable online and in-game. Isn't that the same as the Diablo II as it's played online? The Diablo II character that's shown in Figure 1 that's relied upon to show the claimed game avatar is a typical character representation or an avatar. It appears to be used only in the game. Online. Perhaps the game itself is connected online but not used outside of the game in, for example, an avatar shop or in some other online context outside of gameplay. Where are avatar shops discussed? Avatar shops are discussed in the briefs and in the claims and in the background of the specification, but the point is the claims are directed to, and for example, Claim 1 is directed to providing an avatar that has game avatar functionality, so it is a character representation specific to a game but also usable outside of a game online in, for example, an online store such as an avatar shop where you can purchase items that are usable in gameplay, equip those items even in the avatar shop, enter the game, have those items equipped and shown on the avatar as it's represented in gameplay just as the avatar would have been represented in the avatar shop outside of gameplay. And the game items that are picked up in the avatar shop and then brought into the game are added and combined into layers of the game avatar. And the combining is a recited step of Claim 1, for example, and the combining is done using multiple layers of the game avatar. So your invention is essentially additional purchases required in-game? The claims do not require a digital purchase. The claims require that there be an avatar that has multiple layers that you can use to associate. But that's Diablo 2. Diablo 2 does not have a game avatar that has multiple layers. It's not shown to have multiple layers. Well, okay, let me ask you this, because the way I read Diablo 2, you have one layer, the body of the avatar, making your clothes, and then another layer is a piece of armor or clothing or magical clothing or something. And another layer is a glass bottle with a potion that's placed in the right-hand slot. And those are all different layers that combine to produce that figure at that point in time until something changes. Am I correct? General Clerk is correct insofar as the character representation that's in the play screen, for example, a Figure 1 of the Diablo 2 manual that's relied upon that's in the play screen, it could have multiple layers to it, to the character itself. It's not clear whether it does. It might just be a single-layer representation, but the board— Well, they seem to articulate that that hand with the slot filled with the potion bottle is a different layer than the rest of the body. And I'm making air quotes again. It seems that the board found that by way of saying that if you add a game item to a slot that's in an inventory screen, then it will show up on the character. So the board found that the inventory slots are the multiple layers with which game items are associated. And the problem with that finding is that it ignores the express claim language. Claim 1, for example, requires that the gambitar comprise multiple layers, the gambitar itself, not just a general display screen. So the gambitar itself has to describe multiple layers, the multiple layers of the gambitar, not other layers on the screen associated with it. Well, let's just say the other thing is an avatar. Okay, that's your position, I think. That Diablo avatar has to comprise multiple layers, does it not? Because it's malleable. It's not clear that it has to require multiple layers. When it uses up its arrows, I think they said, right? The bow goes, or the quiver for the arrows goes away. Yes, ma'am. Ipso facto, it's changed. There's a different layer. That is not, it's not clear what's going on with the character that's in the play screen. The quiver may disappear, but there was no step of combining a layer with the avatar that's associated with a game item. The layers that the board is determined correspond to the layers in the claim are layers in the inventory screen that's in figure one. That's part of the game. But that's part of the game that's not part of the avatar or gambitar, whichever way you read the gambitar or avatar recitation. The claims require the gambitar to have multiple layers itself, not just be associated with multiple layers. And the board determined that the gambitar itself doesn't have to include layers. So when the Diablo character advances to another skill level, at that point, is it a different layer? That is not clear. And I think it's important to look to what the board determined were layers and how they determined what were the layers in the Diablo II manual. They rested on the idea that figure five of Appellant's 743 patent showed an example of an avatar with a game item attached to the avatar and a game item sort of separate from the avatar in a background layer. And figure five does show an avatar or gambitar having multiple layers, but those layers are of the avatar or gambitar. They're not of a separate inventory screen. They're not of the game generally. They have to be comprised. The gambitar has to comprise the multiple layers. At a point, the avatar finds a glass bottle lying on the ground. That's inventory screen, right? It appears that may be what's going on in the Diablo II manual. And then it picks up the glass, chooses to pick up the glass bottle or whatever it does, right? Correct. At that point, is that glass bottle part of the avatar screen? That is not clear. In figure one, for example, there are game items shown in an inventory screen on the right-hand side of the figure. And that inventory screen, let's assume they have layers. They are not layers of the avatar or gambitar or alleged gambitar that's in the play screen. They may accompany the avatar or gambitar. Yes, Your Honor, they may accompany the avatar or gambitar, but they are separate from, in fact, the player character. Okay, so in your gambitar, when it goes into a shop online and purchases a potion, right? And it goes into a game and it uses and it carries that potion around. Is that potion accompanying it or is it part of the gambitar? In the context of the claims, the claimed invention, that game item would be associated with the gambitar itself and would show up on or right next to the gambitar, and you would be able to bring it into gameplay. In the Diablo II manual figure one, it doesn't appear that that is happening. But it says he can throw the potion at someone and cause them to weaken, I think was the phrase. He can throw a potion, but the game items are still shown and added to the inventory screen, the layers of the inventory screen. It's not used up at that point? I think that's a different issue. I think that goes to the exhaustion recitation of the claims and whether there were arguments about whether Diablo II manual discloses exhaustion of game items and the board had found that, for example, it does not make sense to the board that running out of javelins would not cause disappearance of javelins from the game character, which I think is an improper determination because that may not make sense to the board, but there's no common sense finding in the prior art to that effect. It sure looks like the manual says that. The manual doesn't specifically say that the avatar or gambitar shown in the play screen might show two or a plurality of game items, each of which would disappear upon exhaustion. The Diablo II manual does not show that. Final word, you're into your rebuttal. Do you want to save it and hear from the other side? I will reserve for rebuttal. Thank you. Good morning. Please, the court. The board's determination that the claims are unpatentable as obvious is fully supported by substantial evidence and GATT hasn't shown otherwise. Each of the findings that the Diablo II manual discloses or teaches as specific limitations of Claim 1 is specifically supported in detail in the board's final written decision. What about this online shop idea? That is, what I take from your opposing counsel, and I don't recall seeing this, actually. He says it's spread through the briefs. I don't recall seeing it, that you could have an avatar that strolls metaphorically into an online shop, purchases with real money a magic potion, and then decides to go into Diablo II or some other game and walks in with that purchased potion. That makes it different than, in some fashion, the ability to play online against different people in Diablo II. First, thank you, Judge Wallach. I think that this online requirement was not something that GATT raised before the board. So this is a new argument we are getting on appeal. Okay, stop. I'm going to want to see that in the record then, counsel. You're going to have to cite me. Okay. But to the extent what GATT is trying to argue and assert is that the gambitar has to be, or an avatar or gambitar has to be available online or both online and in the game and outside the game, that's something that was specifically addressed by the board. And what the board found is either under board's construction or under GATT's construction, requiring this outside the game, that Diablo II indeed does disclose that the... Diablo avatars amongst Diablo's one, two, three, however many there are. I don't know the specifics on that. I do know that what Diablo II does disclose is it talks about and it references the Diablo II manual. I can refer you to the appendix 4374 where it discloses that the characters represent in the game and on battle.net, which is Blizzard's online gaming network, and would connect to a network to select and create characters. There's also disclosure about being able to use these same characters in an online chat room and set up other games. Now, does it have to go further outside of that network? I believe that is a new argument that we're hearing on appeal. I mean, in terms of the question that you had... So this idea of setting up other games, is that a new game? Or, i.e., is it another Diablo II game amongst new players? Or is it a different game than Diablo II that the players choose to set up and create their own universe? As what's disclosed in the Diablo II manual? It's on blizzard.net. I actually... I didn't look to see what blizzard.net was. That would be the aura of that record. I should have spent more time playing video games. I should have spent less. I believe as... I know that... So battle.net that's described at 4375 of the appendix, has that once you're logged in and you select a character, you're placed onto one of battle.net's Diablo II realm chat channels. So, perhaps they're all within the same realm, but there could be multiple Diablo II games. But, regardless, I think even under the narrowest construction here, there's substantial evidence in the record to show that, indeed, the Diablo II manual does meet this feature, even under GATS, more this narrow construction requiring this in and out of the game. The patent described to me a methodology for creating a game avatar which could stroll the web and, despite the different coding of various games, enter into them. It might be interesting, but I couldn't see that in the patent. I did not see that in the patent either. Um... Did... Let's see. Just to address my friend's argument that the claims somehow require representing a user in an avatar shop, I don't believe that they do make that, that there is not that kind of requirement there. And, again, I think that that is a new argument with respect to this avatar shop was a new argument that's being raised for the first time on appeal, and I believe in the reply brief. With respect to the issue of layers, Diablo II, this is an issue, again, where the board's finding that layers are disclosed in Diablo II is supported by substantial evidence. Diablo II discloses that there's multiple graphic regions for displaying graphics objects. That's detailed in the board's final written decision at pages 24 to 29, appendix A, 1023 to 28. And even under the board's... Even under the narrowest construction to require a display, to require that an actual figure, character, be holding an object, can refer you to the picture that's shown, the display shot at page 4371 in Diablo II, which shows a character holding a javelin. And that's just representative and shows that there was substantial evidence to show that these layers are displayed on the actual characters. I imagine there would be other ways of writing the code other than in layers, but I'm not aware of such a thing, and I don't see anything that tells me that, either inside or outside Diablo or in the pack. That is... I'm simply speculating at this point. There might be other ways than layers to represent the hand holding the potion as opposed to it not holding the potion, but I'm not aware of that. I think it would be cumbersome. I would agree, although I'd be speculating as well. In addition to Diablo II actually disclosing the actual figure showing, as an example, the character holding a javelin, there's ample evidence in the record showing that Diablo II also shows layers that are associated with, where you see the equipment in the slots and boxes that's associated with a specific character. And even if Diablo II doesn't disclose... weren't found to disclose layers, that there's not substantial evidence, which we would disagree, there is substantial evidence in the record to show that it does, then layers are also expressly disclosed by Rogers and there's substantial evidence to show the combination of... support the combination of Rogers with Diablo II as well, including motivation to combine, which, again, for the first time on appeal, we've heard an argument that there wasn't a motivation to combine, but there is specific evidence in the record to support the motivation to combine Diablo II and Rogers, which expressly discloses layers. Thank you. I will ask that this court affirm, and I yield the rest of my time. So do you have those references for me? I will address those citations. The background of the patent discusses purchasing the avatar in an avatar shop, and the claim one also recites providing an avatar by way of an avatar shop, and that is discussed at pages two through three of the brief. That's it? Appellant's brief. You said throughout the briefs. When was it raised first as an issue? As an issue? The issue about whether a gambitar or an avatar as claimed is disclosed in a prior art has been briefed. No. When was the issue of purchasing in an online shop raised? We discussed that here this morning, Your Honor, by way of just to explain the context of the claim. So it wasn't raised before anybody before this? Your opposing counsel said it first came up in a reply brief before the board. The issue that there would be a purchase in an avatar shop and that Diablo II does not disclose that, I don't recognize the distinction between the arguments that we have in our appeal brief, our opening brief, which is the Diablo II reference does not disclose a gambitar, and the reasoning why is because a gambitar is specific to a game. An avatar may not be specific to a game. The claims are directed to a combination of both. I think that's how we got to the avatar shop. If you don't see a distinction, I won't worry about it. Thank you, Your Honor. And I will reiterate that. I wouldn't thank me for that. Diablo II, the focus of the argument is that Diablo II does not disclose a character, an avatar or a gambitar, having multiple layers. Multiple layers for adding game items and game item functions. And Rogers does disclose adding layers and forming avatars by adding layers. But Rogers doesn't disclose associating game items or game item functions with those layers. Diablo II's character or avatar may have a javelin but doesn't have multiple javelins, doesn't have multiple items. The items are shown in the inventory screen to the right of the player, which is different. And I believe I only raised the avatar shop or item shop to explain that the advantage is that the game items can be purchased and associated with an avatar before entering a game and game play. That's all I have. Thank you. Thank you both sides. The case is submitted. The appeals are proceeding this morning.